UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WESTERN DIVISION                                    C.A. No. 04CV30241-MAP

MICHAEL F. ERALI,

      Plaintiff,

                                                      MEMORANDUM OF LAW IN
v.                                                 SUPPORT OF DEFENDANT, TOWN
                                                      OF ORANGE'S MOTION FOR
TOWN OF ORANGE,                                    SUMMARY JUDGMENT

      Defendant

I.      INTRODUCTION

The plaintiff, Michael F. Erali, II, ("Erali") filed a four-count complaint against the

defendant, the Town of Orange (the "Town"), asserting that the Town, acting by and through its

Cemetery Superintendent, former Cemetery Superintendent, and Cemetery Commissioner,

engaged in unlawful discrimination by sexually harassing Erali and retaliating against him for

complaining of the Town's unlawful conduct, in violation of Title VII of the 1964 Civil Rights

Act and Massachusetts General Law Chapter 151B.  Erali also alleges that he suffered emotional

distress as a result of the Town's unlawful discrimination.

Erali's allegations of sexual harassment and retaliation are based on phone calls that

Evelyn Daly ("Daly"), the Cemetery Superintendent, made to Erali's home and others.  In

addition, Erali claims that Daly touched him on one occasion and made a sexually explicit

comment in his presence.  On another occasion, Erali claims that Daly abruptly shut the door to a

Cemetery Department break room, giving Erali's girlfriend, Aleesha Watson ("Watson")[1] the

impression that he and Daly were engaged in a sexual relationship.  Erali also asserts that Daly

_____

[1] At all times relevant to this complaint, Watson was Erali's girlfriend or fiancée.  Watson and Erali were married
subsequent to the actions giving rise to this complaint.

made two sexually explicit comments to Watson about him.  Finally, Erali avers that the Town constructively discharged him.

The Town argues that, on the basis of the record, there is no genuine issue of material fact since the acts alleged do not rise to the level of unlawful discrimination, that a jury could not conclude that the acts were unlawful, and that the Town had legitimate business reasons for some of the acts alleged.

II.    FACTS & PROCEDURAL HISTORY

The Town relies upon and incorporates herein the Defendants' Local Rule 56.1 Statement of Facts.  The Town's Statement of Facts will be referred to below as "SOF, ¶___."

III.    ARGUMENT

   A.    Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter law."  Fed.R.Civ.P. 56(c).  In order to defeat a summary judgment motion, "the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would bear the burden of proof at trial."  Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1171 (1st Cir. 1988).  Under Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987), summary judgment is appropriate where the non-moving has the burden of proof and "fails to make a showing sufficient to establish the existence of an element essential to that party's case."

   B.    There Is Not Sufficient Evidence To Support Erali's Sexual Harassment
        Claims, and The Town Is Entitled to Judgment As A Matter of Law.

In the first and third claims for relief in Erali's Complaint, he asserts discrimination based on sex, specifically that Daly, his supervisor, subjected him to sexual harassment, which created

a hostile work environment. Erali relies upon the following comments or incidents to establish his claim; however, in totality, the Town asserts that these incidents fail to constitute a viable sexual harassment claim:

- Fifty to sixty phone calls made by Daly to Erali;

- Daly once putting her arm around Erali's shoulders;

- Daly's comment regarding giving a Highway Department employee oral sex;

- Daly's act of shutting the door to the break room upon Watson's arrival;

- Daly's comment that she had Erali all day while Watson had him all night; and

- Daly's comment that she had Erali working on his knees. SOF, ¶27.

1.  The Hostile Work Environment Sexual Harassment Standard

Title VII, 42 U.S.C. § 2000e-2, and G.L. c. 151B, § 4(16A), prohibit discrimination based on sex and sexual harassment in employment. Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . . sex . . . ." 42 U.S.C. § 2000e-2. Hostile work environment sexual harassment occurs when an employer's "conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986).

To succeed on a hostile work environment[2] sexual harassment claim, a plaintiff must demonstrate: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create

---

[2] As opposed to quid pro quo sexual harassment, which Erali does not allege.

an abusive work environment; (5) that sexually objectionable conduct was both objectively and

subjectively offensive, such that a reasonable person would find it hostile or abusive and the

victim in fact did perceive it to be so; and (6) that some basis for employer liability has been

established.  See O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001); College-

Town, Div. of Interco v. MCAD, 400 Mass. 156, 162 (1987).

The Supreme Court directs the courts to "determine whether an environment is

sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance."  Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998); Harris v. Forklift

Systems, Inc., 114 S. Ct. 367, 370 (1993).  When "disgusting comments" and conversations

occur "everyday," a hostile environment exists.  White v. N.H. Dept. of Corr., 221 F.3d 254,

260-261 (1st Cir. 2000).  The courts, however, have been unwilling to recognize a hostile work

environment and violation of Title VII or G.L. c. 151B, where the alleged conduct is isolated or

unspecific.  See Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783 (1st Cir.1990) (single or

isolated remarks do not establish a hostile environment).  Accord Marrero v. Goya of Puerto

Rico, Inc., 304 F.3d 7, 18 (1st Cir. 2002) (internal citations omitted) ("A hostile work

environment, . . . is created by "repeated conduct"-"a series of separate acts that collectively

constitute one 'unlawful employment practice' "); Lipsett v. University of Puerto Rico, 864 F.2d

881, 905 (1st Cir. 1988) (plaintiff made out prima facie case of hostile environment harassment

by specific allegations that she was subjected to repeated and unwelcome sexual advances).

"Most hostile work environments are bred from an ongoing series of harassing incidents;"

however, a single act of harassment may, if egregious enough, suffice to create a hostile work

environment.  <u>Noviello</u> v. <u>City of Boston</u>, 398 F.3d 76, 84 (1st Cir. 2005) (supervisor's physical assault accompanied by crude remark not egregious enough) (internal citations omitted).  Additionally, "simple teasing, offhand comments, and isolated incidents" are insufficient to create a hostile work environment.  <u>Faragher</u>, 524 U.S. at 778; <u>Kosereis</u> v. <u>Rhode Island</u>, 331 F.3d 207, 216 (1st Cir. 2003).  Courts must use "[c]ommon sense, and an appropriate sensitivity to social context," to distinguish between such innocuous behavior and severely hostile or abusive conduct.  <u>Oncale</u> v. <u>Sundowner Offshore Serv., Inc.</u>, 523 U.S. 75, 82 (1998).

Sexual harassment is statutorily defined as unwelcome sexual advances, requests for sexual favors, and other verbal, non-verbal or physical conduct of a sexual nature when "such conduct creates an intimidating, hostile, or offensive environment that unreasonably interferes with a person's ability to work or to participate in a school program or activity."  29 C.F.R. § 1604.11(a) (1985); <u>see also</u> <u>Meritor Sav. Bank, FSB</u>, 477 U.S. at 65; <u>Gorski</u> v. <u>N.H. Dept. of Corr.</u>, 290 F.3d 466, 472 (1st Cir. 2002).[3]  A hostile work environment occurs when verbal, nonverbal, or physical conduct of a sexual nature is severe, persistent, or pervasive enough to limit a person's ability to work.  <u>Plaza-Torres</u> v. <u>Rey</u>, 376 F.Supp.2d 171, 177 (D.Puerto Rico 2005); <u>see also</u> <u>Ramsdell</u> v. <u>Western Mass. Bus Lines, Inc</u>., 415 Mass. 673, 678 (1993) (alleged sexual conduct must be objectively and subjectively "severe and pervasive" to establish *prima facie* case of sexual harassment).  An "employee who alleges sexual harassment must show that the harasser's conduct was intentional, intimidating, or humiliating to the plaintiff in a way which affected [his] performance or the conditions of [his] employment."  <u>Ramsdell</u>, 415 Mass. at 678.

---

[3] Massachusetts statutory law provides a similar definition:  " 'sexual harassment' shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when… such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment."  G.L. c. 151B, § 1(18).

The Supreme Court standard for employer liability for actions by a supervisor in a harassment case is set out in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). If harassment by a supervisor with immediate or higher authority over an employee results in a tangible employment action against the employee, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits, then the employer is vicariously liable; if the harassment does not result in a tangible employment action, but is sufficiently severe and pervasive, then the employer is still vicariously liable, but an affirmative defense is available. Id. at 752. When no tangible employment action is taken, such as the case here, the plaintiff may allege constructive discharge, and the defending employer may raise an affirmative defense to liability if: (a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer or to avoid the harm otherwise. Id. at 765; see also Modern Continental/Obayashi v. MCAD, 445 Mass. 96, 110-111 (2005) (employer who took prompt action that was reasonably calculated to stop sexual harassment was not liable for sexual harassment). Evidence of reasonable care includes having a sexual harassment policy in place, following the policy in practice, and showing that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities to end the harassment. See Ellerth, 524 U.S. at 765.

  2. There Is No Evidence to Support That Daly's Actions Were Based On Sex or Gender.

  Erali is unable to establish a prima facie case of sexual harassment. First, the alleged harassment in Erali's Complaint is not based on his sex or gender. Rather, the evidence shows that Erali's claim is based on personal animosity stemming from Watson's jealousy of an

imaginary and non-existing relationship between Erali and Daly and/or Erali's disappointment that Forest left as Superintendent and was replaced by a female, neither of which is discriminatory or covered by Title VII or G.L. c. 151B.   SOF, ¶¶18, 27-28, 31.   The record has no evidence from which a factfinder could conclude that Daly's actions were due to sex or gender.

The undisputed evidence shows that throughout his employment with the Cemetery Department, Erali was either out sick or late for work on at least sixty-nine (69) days, for which he was issued both written and verbal warnings.  SOF, ¶¶ 9, 10.  Additionally, on several occasions when Erali was late for work or did not report to work, he failed to call Daly to advise her that he would be late or out.  SOF, ¶ 12.  Erali was the only full-time employee in the Cemetery Department besides Daly.  SOF, ¶ 6.  Consequently, on days when Daly was not sure if Erali would be reporting to work or if he would be late, Daly called him to find out if he would be coming to work, which averaged 3-5 times per week.  SOF, ¶¶ 13, 33.  Daly acknowledged calling Erali at his home and at his mother's home.  SOF, ¶¶ 13, 15.  Erali also acknowledged that he and his parents did not always answer the phone when Daly called him, and Watson acknowledged that she and Erali did not have an answering machine for the entire period of time that Erali worked for the Town.  SOF, ¶¶ 34-35.  Erali's lack of work ethics, his indifference and that of his family members to answering calls from Daly, and his lack of an answering machine precipitated Daly's phone calls so that she could obtain confirmation as to whether or not Erali was planning on reporting to work in order to make necessary and appropriate daily scheduling decisions for the Cemetery Department.  Accordingly, Daly's phone calls were motivated by legitimate business concerns, not sex or gender.  See Hoseman v. Technical Materials, Inc., 554 F.Supp. 659, 666 (D. Rhode Island 1982) (finding daily telephone calls placed to plaintiff's

home over two week period not harassment where employer had legitimate, non-discriminatory business need to make personnel decisions).  Moreover, Daly's telephone calls were not crank calls, O'Rourke v. City of Providence, 235 F.3d 713, 724 (1st Cir. 2001) (affirming sexual harassment verdict where victim offered evidence that she received crank phone calls at home, with the caller whining or making crude noises); and Daly's calls did not include any derogatory remarks, Butler v. RMS Technologies, Inc., 741 F.Supp. 1008, 1010 (D.Mass. 1990) (overturned for other reasons by Powell v. City of Pittsfield, 143 F.Supp.2d 94 (D.Mass. 2001).  Furthermore, the mere placement of phone calls, which no one answered, does not constitute sexual harassment.  See 29 C.F.R. § 1604.11(a) (1985); G.L. c. 151B, § 1(18); MCAD, et al. v. Massachusetts Trial Court, Docket No. 98-BEM-3943 (MCAD) (July 14, 2005) (hang-up calls fail to constitute sexual harassment where calls lack any "verbal or physical conduct of a sexual nature" and "consisted of no content at all").[4]

   With regard to Daly's putting her arm on Erali's shoulders on one occasion and closing the break room door on another occasion, again, no evidence exists that she did so because of Erali's sex or gender.  Daly acknowledged that she touched Erali's shoulders in a show of camaraderie and that the break room door was kept closed in the wintertime to keep the heat in and to keep heating costs down.  SOF, ¶¶ 30.  The brief physical contact described of Daly putting her arm around Erali amounts to nothing more than an "isolated incident," Faragher, 524 U.S. at 778; Kosereis, 331 F.3d at 216, and lacks "a sexual nature."  29 C.F.R. § 1604.11(a) (1985); Meritor Sav. Bank, FSB, 477 U.S. at 65; Gorski, 290 F.3d at 472.  This brief contact fails to rise to the requisite level of egregiousness.  See, e.g., Noviello, 398 F.3d at 84.  With respect

---

[4] The Massachusetts Supreme Judicial Court gives great deference to decisions of administrative agencies, and accords substantial deference to Massachusetts Commission Against Discrimination (MCAD) policies and procedures.  See Knight v. Avon Products, Inc., 438 Mass. 413 (2003); Hanover Ins. Co. v. Commissioner of Ins., 443 Mass. 47 (2004) (citing Cobble v. Commissioner of the Dep't of Social Servs., 430 Mass. 385, 390 (1999)).

to Daly shutting the door to the break room behind her upon Watson's arrival, the act of closing

a door also lacks a sexual nature.

Further, there is no evidence that the three comments made by Daly, one made in Erali's

presence and the other two made to Watson, without Erali's presence, were based on his sex or

gender.  The oral sex comment amounts to "a single, isolated remark," Chamberlin, 915 F.2d at

783, "a mere offensive utterance," or an "offhand comment." Faragher, 524 U.S. at 778.  "Title

VII is not a clean language act," and neither is Chapter 151B.  Prader v. Leading Edge Products,

Inc., 39 Mass. App. Ct. 616, 619-620 (1996) (internal citations ommitted).

In addition, the comments made to Watson, a third party, away from the work site, have

no bearing on a sexual harassment claim brought by Erali because they were not made directly to

Erali, or in his presence.  See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 409 (1st Cir. 2002)

(evidence of intimidating behavior and hostile interactions directed at plaintiff outside of work

may help determine severity and pervasiveness of hostility in workplace) (emphasis added); see

also Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 541 (2001) (finding acts of

sexual harassment directed against others in the workplace, and known to plaintiff, may be

considered part of the environment in which the plaintiff worked) (emphasis added).  Thus, there

is no evidence on the record for a factfinder to conclude that Daly's acts and comments were

based on sex or gender, and therefore, the Town is entitled to judgment as a matter of law.

    3.   There Is No Evidence on The Record To Support That Daly's Actions And
            Comments Were Severe And Pervasive.

Erali also cannot prove that Daly's alleged actions and comments were severe and

pervasive.  Erali alleges that Daly made fifty to sixty phone calls over the course of six months.

SOF, ¶ 27.  His contention, however, amounts to nothing more than vague and unspecified

allegations of harassment because Erali fails to provide dates, times, duration of phone calls, or

any details as to the nature of the topics discussed.  More importantly, Erali fails to provide one iota of evidence to support the premise that the phone calls were of "a sexual nature." 29 C.F.R. § 1604.11(a) (1985); see also Meritor Sav. Bank, FSB, 477 U.S. at 65; Gorski, 290 F.3d at 472. In fact, of the fifty to sixty telephone calls Daly purportedly made, Erali only recalls speaking to Daly by telephone on three occasions:  1) once regarding a former co-worker of Erali's, who had been deployed to Iraq; 2) once about a brush fire at a cemetery; and 3) on April 21, 2003, about a fight with Watson.  SOF, ¶ 28.  Daly admits to calling Erali about the former co-worker being deployed to Iraq, and while this phone call can be categorized as personal and not work-related, it is hardly "of a sexual nature" to satisfy the statutory requisite.  Daly's call to Erali regarding a brush fire at one of the cemeteries is clearly related to his duties as a cemetery employee and is of an emergency to warrant a phone call to Erali's house.  Further, Erali has offered no evidence that Daly's phone call regarding the brush fire was "of a sexual nature" to satisfy the statutory standard.

With respect to the April 21, 2003 call, Erali maintains that Daly called to find out if he and Watson were fighting.  Assuming, arguendo, that Erali's recollection of this phone call is accurate and complete, Erali has still failed to offer any evidence that Daly's phone call was "of a sexual nature" to constitute sexual harassment.  In this case, Erali would have the factfinder conclude that Daly's phone calls to his house or to relatives' homes automatically constitute harassing behavior.  Such a conclusion, however, cannot be reached in a vacuum, and, as noted previously, the mere occurrence of multiple, unanswered or hang-up phone calls does not constitute sexual harassment.  See Hoseman, 554 F.Supp. at 666; MCAD, supra, Docket No. 98-BEM-3943 (MCAD).

10

As noted above, *see* Section III.B.2. *supra*, Daly acknowledged that she called Erali at home and at his mother's house, but each call, except for the one regarding Erali's friend in the military, was for legitimate business reasons. SOF, ¶¶ 13, 15. **A**s noted previously, Erali's habitual tardiness and absenteeism, without calling in, triggered Daly's phone calls to determine when, or if, Erali would be reporting to work so that she could plan her department's workload. SOF, ¶¶ 12-13. If Daly made frequent phone calls to Erali's house, her calls were simply necessitated by the facts that Erali was frequently late or absent from work, he and his relatives did not answer the phone, and he had no answering machine. SOF, ¶¶ 9, 34-35.

With respect to any physical contact between Daly and Erali, as noted above, the only incident that occurred was when Daly put her arm on Erali's shoulders. SOF, ¶ 27. This gesture was brief and made in a friendly display of camaraderie, as if to express that the new supervisor was fitting in with her employees. Id. Moreover, this gesture amounts to nothing more than a single, "isolated incident" and was indicative of the friendly relationship that existed between Daly and Erali. See Faragher, 524 U.S. at 778; Kosereis, 331 F.3d at 216. Erali often chatted and shared personal information with Daly and even invited her to his home on one occasion. SOF, ¶ 32. Moreover, the evidence reveals that Erali worked alone with Daly on Saturday, April 19, 2003, which undermines Erali's contention that he was uncomfortable being around Daly. Rather, the evidence suggests that the overall atmosphere of the Cemetery Department was one of supportive co-workers sharing their life experiences and was hardly abusive, coercive, intimidating or humiliating.

With respect to alleged harassing comments by Daly, as noted previously, only one comment regarding oral sex, was made in Erali's presence, and the statement was not directed at him or in reference to him. SOF, ¶27c. Further, this comments amounts to nothing more than

"a single, isolated remark," Chamberlin, 915 F.2d at 783, or "a mere offensive utterance," Faragher, 524 U.S. at 778. The other two comments, which were made to Watson, not Erali, are not relevant to Erali's claim. See Meritor Sav. Bank, 477 U.S. at 67 (single instance of offensive language, not directed toward plaintiff, cannot constitute an offensive work environment) (emphasis added); but see Crowley, 303 F.3d at 409 (evidence of intimidating behavior and hostile interactions directed at plaintiff outside of work may be permitted) (emphasis added).

Furthermore, Erali was doing well at work, despite his attendance record. Erali had been promoted twice and was due for another pay increase, after successfully obtaining his hoister's license. SOF, ¶¶ 1, 36. Accordingly, the atmosphere had no negative effect on his performance, and was not a situation where Daly's "conduct was intentional, intimidating, or humiliating to the plaintiff in a way which affected [his] performance or the conditions of [his] employment." Ramsdell, 415 Mass. at 678. Erali cannot establish that the alleged harassment was severe and pervasive, and therefore, the Town is entitled to judgment as a matter of law with respect to Erali's hostile work environment claim.

      4.     <u>There Is No Evidence On The Record to Establish That Daly's Actions Were Objectively Offensive.</u>

In evaluating the allegations of a hostile work environment, the conduct must be both objectively and subjectively offensive. See O'Rourke, 235 F.3d at 728; College-Town, Div. of Interco, 400 Mass. at 162. In this case, no evidence exists to show that a reasonable person would have been offended by Daly's conduct or comment, even if Erali himself took offense to it. At most, the record establishes that Daly was an inexperienced manager, who had some trouble navigating the boundary between the personal and the professional; however, "a supervisor's unprofessional managerial approach and accompanying efforts to assert her

authority are not the focus of the discrimination laws." Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 46-47 (2003).

Despite Erali's allegations, Daly's phone calls were made for legitimate business purposes. The single, isolated event where Daly put her arm on Erali's shoulders was nothing more than a friendly gesture, with no underlying coercive or humiliating motive, and the oral sex comment, which Daly denies, was nothing more than a single, isolated remark or mere offensive utterance. Erali's allegations are simply insufficient to establish objectively offensive conduct.

In examining the totality of circumstances, Erali's allegations fail to rise to the level of conduct that had the purpose or effect of unreasonably interfering with his work performance or creating an intimidating, hostile, or offensive working environment, Meritor Sav. Bank, FSB, 477 U.S. at 65. Instead, the facts reflect that Erali last worked alone with Daly on April 19, 2003, three days before he quit, and if Erali had not quit, he was due for a promotion. SOF, ¶¶14 and 36. Clearly, Daly's conduct was not so offensive as to interfere with Erali's work performance. There is no evidence on the record to support Erali's hostile work environment claim, and, therefore, the Town is entitled to judgment as a matter of law.

     5.     The Town Took Appropriate Action In Response To Erali's Allegations.

Because no tangible employment action was taken in this case, the Town may raise an affirmative defense to liability because the Town exercised reasonable care to prevent and to promptly correct any sexually harassing behavior, and Erali unreasonably failed to take advantage of preventive or corrective opportunities provided by the Town. Ellerth, 524 U.S. at 765.

In the circumstances here, the evidence shows that the Town had a Sexual Harassment Policy in place, and Erali acknowledged receiving a copy of it when he began his employment.

SOF, ¶ 26.  The policy included provisions for an employee to report allegations of harassment to a manager, department head, Town Administrator, or the Massachusetts Commission Against Discrimination.  SOF, ¶ 26.  Despite Erali's allegations that Daly had been harassing him, his sexual harassment complaint was not articulated until April 21, 2003, the day before he resigned. SOF, ¶¶ 19, 21, 25.  While Erali generally complained to Forest about Daly on two occasions prior to that date, he never alleged in those conversations that Daly was sexually harassing him or that the Cemetery Department was hostile or abusive.  SOF, ¶ 18.  Rather, those two complaints revolved around Erali's displeasure at being asked to do menial tasks, Daly's phone calls,  and Watson's impression that Erali and Daly were fooling around.  SOF, ¶ 18.  To the extent that Erali's conversations with Forest may be construed as a report of sexual harassment, Forest took action appropriate to the allegation and spoke with Daly and Kimball regarding Daly's behavior.  SOF, ¶¶18-19.

After Watson and Erali complained to Forest on April 21, 2003, Forest immediately reported their complaint to Kimball, who spoke with both Watson and Erali later that evening. SOF, ¶¶ 19, 20, 21.  In his conversations with Erali, Kimball noted that Erali simply requested that Daly only call his house for work-related reasons and that Daly not hug or touch him in an affectionate manner.  SOF, ¶ 21.  Kimball arranged to meet with Erali at the Cemetery Department the next day to further discuss his complaints and promised to speak to Daly.  SOF, ¶¶ 21, 22.  Subsequently, on April 22, 2003, Kimball met with Forest and Daly; however, Erali did not show up for work that day.  SOF, ¶ 22.  Kimball addressed Erali's concerns with Daly, and she agreed to maintain a professional relationship with Erali and only call his house for work-related reasons.  SOF, ¶ 22.

14

Consequently, while the Town had a Sexual Harassment Policy in place, Erali waited several months before making a formal complaint. After Erali finally made a complaint to Forest and Kimball, they followed the policy and immediately addressed and attempted to resolve Erali's allegations and concerns. In these circumstances, Erali's delay in reporting Daly's purported sexual harassment, followed by his immediate resignation, amounts to a failure on his part to take advantage of any preventive or corrective opportunities to end the alleged harassment. Ellerth, 524 U.S. at 765. Erali never gave the Town an opportunity to prove that his concerns had been addressed. Instead, Erali offers his subjective belief that the allegedly discriminatory behavior would continue, even though Erali had expressed satisfaction with Kimball's handling of the matter. Moreover, the mere fact that the victim is not satisfied with the employer's response does not suffice to render that response unreasonable. See Modern Continental/Obayashi, 445 Mass. at 110. Accordingly, the Town is entitled to summary judgment because the Town took immediate and appropriate action, and no evidence exists that the allegedly discriminatory behavior continued.

      C.    There Is No Evidence on the Record to Support Erali's Hostile Work Environment or Constructive Discharge Claims.

Erali also alleges, without any supporting facts, that his work environment became so hostile, and he had no choice but to resign. In order to establish a *prima facie* case of constructive termination, the plaintiff must show "that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." GTE Products Corp. v. Stewart, 421 Mass. 22, 34 (1995), quoting Rosado v. Santiago, 562 F.2d 114, 119 (1st Cir.1977). Proof of a hostile work environment is also a prerequisite to prove constructive discharge by retaliation. See Smith v. Bath Iron Works Corp., 943 F.2d 164, 166 n. 4 (1st Cir. 1991). Hostility for these purposes means a work environment

15

so extreme that staying on the job while seeking redress would have been unbearable.  See

Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 28 (1st Cir. 2002) (internal citations omitted).

This is an objective standard and cannot be triggered by the employee's subjective beliefs.  Id.

Generally, a single, isolated act of an employer will not be enough to support a constructive

discharge claim.  GTE Products Corp., 421 Mass. at 34.  The working conditions "must be

unusually aggravated or amount to a continuous pattern before the situation will be deemed

intolerable."  Id. at 34-35, quoting Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1248 (1994)

(internal citations omitted).  "The test is met if, based on an objective assessment of the

conditions under which the employee has asserted he was expected to work, it could be found

they were so difficult as to be intolerable."  GTE Products Corp., 421 Mass. at 34.  A plaintiff

must offer evidence of more severe harassment that that required for a hostile work environment

claim.  See Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 48 (1st Cir. 1998).

Moreover, an employee is expected to remain employed while seeking redress.  See Cazzola v.

Codman & Shurtleff, Inc., 751 F.2d 53, 55 (1st Cir. 1984).  The employee must also establish

that he exhausted all the alternatives to leaving employment.  Estate of Douglas McKinley v.

Boston Harbor Hotel, 14 MDLR 1226 (1992).  "The standard for constructive discharge 'is, and

should be, a strict one,' and requires that an employee must demonstrate that 'the threat of

physical or psychic harm was so great as to preclude ever returning to work.'"  Elizabeth Eggert

v. Cabot Corporation, 21 MDLR. 131, 142 (1999), quoting Estate of Douglas McKinley v.

Boston Harbor Hotel, 14 MDLR. 1226 (1992).  "Mere dissatisfaction with the nature of

assignments, criticism of an employee's performance, and dissatisfaction with compensation

have been held insufficient to establish a triable question of fact on the issue of constructive

discharge."  GTE Products Corp., 421 Mass. at 35.  The evaluation of a constructive discharge

claim also takes into account how the employer responded to the plaintiff's complaints and whether it was likely that the harassment would continue.  See Lee-Crespo, 354 F.3d at 45; see also Marrero, 304 F.3d at 28.

There are no facts to support a finding that Erali's work environment was so unbearable that a reasonable person could not be expected to work and would have felt compelled to resign. Rather, the facts reveal that Erali enjoyed a cordial, friendly atmosphere, in which he felt comfortable enough with Daly to share personal information and to invite her to his apartment. The facts also reveal that Erali was progressing at work, he had obtained a license that would enhance his value as an employee, and he was due for a pay increase.

The facts established through discovery also reveal that the hostile work environment and constructive termination claims are based on Erali's subjective belief that Daly's telephone calls to his house were of a personal nature and that the calls would not cease, despite assurances to the contrary.  Rather, the evidence demonstrates that Daly's telephone calls to Erali's house were necessitated by Erali's pattern of tardiness and absenteeism.  Erali's Complaint fails to allege any actions that would permit a finding that " 'the threat of physical or psychic harm was so great as to preclude ever returning to work.'"  Eggert, 21 MDLR 142, quoting Estate of Douglas McKinley, 14 MDLR 1226.  Erali told Kimball that he wanted Daly to only call him for work-related matters, yet, a half-hour after receiving such assurances from Kimball, Erali quit, allegedly because he believed the behavior would continue.  There is simply no basis in fact to support Erali's subjective belief that the behavior would persist.  Further, the facts fail to support Erali's contention that he had no choice but to quit because the Town provided Erali with the resolution he requested, and he was allowed time to decide when he would return to work.

Finally, Erali did not exhaust all possible remedies prior to resigning from his employment. Erali did not make any internal complaints under the Town's Sexual Harassment Policy. Once Erali finally reported the allegedly offensive behavior to Forest and Kimball, he indicated that he was satisfied with the manner in which his concerns were addressed, and shortly thereafter, he quit, allowing no time to see if the offending behavior would in fact cease. Erali cannot establish that he exhausted all the alternatives prior to leaving his employment. See Estate of Douglas McKinley v. Boston Harbor Hotel, 14 MDLR 1226 (1992). Accordingly, there is no evidence on the record to establish sexual harassment or constructive termination. Therefore, the Town is entitled to judgment as a matter of law.

D.    There Are No Facts Upon Which A Jury Could Find That The Town Engaged In Unlawful Retaliation.

In his Second and Fourths Claims for Relief, Erali alleges the Town retaliated against him for opposing the Town's discriminatory practices in violation of Title VII and M.G.L. c. 151B. There are no facts on the record to support this theory of liability.

It is unlawful for an employer to retaliate against an employee for initiating an action under Title VII. See 42 U.S.C. § 2000e-2. Similarly, G.L. c. 151B, makes it unlawful for any "person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five." G.L. c. 151B, § 4(4). Because Erali cannot advance any direct evidence of retaliation, his retaliation claim will be subjected to the McDonnell Douglas burden shifting analysis. See Bishop v. Bell Atl. Corp., 299 F.3d 53, 58 (1st Cir. 2002) *citing* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case of retaliation under Title VII and G.L. c. 151B, a plaintiff must show that (1) he engaged in protected conduct, (2) he suffered an

adverse employment action, and (3) the adverse action is causally connected to the protected

activity.  See Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003); MacCormack v. Boston Edison

Company, 423 Mass. 652 (1996).  If Erali succeeds in establishing a prima facie case, the burden

would then shift to the Town "to articulate legitimate, non-retaliatory reasons for its employment

decisions."  Bishop, 299 F.3d at 58.  Thereafter, the burden would return to Erali to demonstrate

that the Town's non-retaliatory justification for imposing any adverse employment action is

pretextual and that the adverse action was a product of retaliatory animus.  Id.  Adverse job

actions include "demotions, disadvantageous transfers or assignments, refusals to promote,

unwarranted negative job evaluations, and toleration of harassment by other employees."

Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998).

       The Town concedes that Erali's complaints to Forest and Kimball constituted protected

activity in satisfaction of the first element of the prima facie case.  Erali, however, did not suffer

an adverse employment action or a hostile work environment, and the Town denies that any such

harm, if it occurred, had a causal connection to Erali's protected conduct.  Erali fails to allege

any adverse employment action in his Complaint, nor does any direct evidence of retaliation

exist.  In fact, the evidence shows that Erali was not demoted, transferred or reassigned; he was

not refused a promotion; and he did not receive any unwarranted negative job evaluations.

Rather, the evidence reflects that Erali had received promotions at work and was due to receive

another promotion or pay increase if he had not quit.  SOF, ¶36.  Moreover, while subjecting an

employee to a hostile work environment in retaliation for protected activity may constitute an

adverse employment action under Title VII or 151B, Erali, as noted above, cannot establish that

he was subjected to a hostile work environment.  See Noviello, 398 F.3d at 91.  As such, the

Town is entitled to judgment as a matter of law on Erali's retaliation claims.

19

IV.    <u>CONCLUSION</u>

WHEREFORE, based on any or all of the foregoing reasons, the Town respectfully requests judgment as a matter of law on all counts of the Complaint.

DEFENDANT,

TOWN OF ORANGE,
By its attorneys,


 /s/ David C. Jenkins
David C. Jenkins (BBO# 251000)
Carolyn M. Murray (BBO# 653873)
Kopelman and Paige, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110
(617) 556-0007

Dated:  February 28, 2006

274653/METG/0538