UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WESTERN DIVISION<br><br>MICHAEL F. ERALI,<br>    Plaintiff,<br><br>v.<br><br>TOWN OF ORANGE,<br>    Defendant | C.A. No. 04CV30241-MAP<br><br>DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND LEGAL ARGUMENT PERTAINING TO UNANSWERED TELEPHONE CALLS AND TELEPHONE CALLS WHERE NO MESSAGE WAS LEFT |

Now comes the defendant, Town of Orange ("Town"), and hereby moves *in limine* to preclude the plaintiff, Michael F. Erali ("Erali"), from presenting any evidence or legal argument pertaining to unanswered telephone calls and telephone calls where no message was left. As grounds for this motion, the Defendant states that such telephone calls fail to constitute evidence of sexual harassment because they fail to meet the statutory definition of sexual harassment based on the fact that the calls went unanswered, no messages were left, and the identity of the caller is unknown, i.e., the telephone calls contain no content, sexual or otherwise.

Title VII, 42 U.S.C. § 2000e-2, and G.L. c. 151B, § 4(16A), prohibit discrimination based on sex and sexual harassment in employment. Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2. Sexual harassment is statutorily defined as unwelcome sexual advances, requests for sexual favors, and other verbal, non-verbal or physical conduct <u>of a sexual nature</u> when "such conduct creates an intimidating, hostile, or offensive environment that unreasonably

interferes with a person's ability to work or to participate in a school program or activity." 29 C.F.R. § 1604.11(a) (1985) (emphasis added); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Gorski v. N.H. Dept. of Corr., 290 F.3d 466, 472 (1st Cir. 2002).[1]

      Federal courts in the First Circuit, as well as the Massachusetts Commission Against Discrimination ("MCAD"), have addressed the issue of telephone calls made to a plaintiff's home and have determined that daily telephone calls fail to constitute sexual harassment if the reason for the calls was the employer's legitimate, non-discriminatory business need to make personnel decisions.  See Hoseman v. Technical Materials, Inc., 554 F.Supp. 659, 666 (D. Rhode Island 1982) (finding daily calls placed to plaintiff's home over two week period not harassment where employer had legitimate, non-discriminatory business need to make personnel decisions).  Additionally, the mere placement of phone calls, which no one answered, fails to constitute sexual harassment. See 29 C.F.R. § 1604.11(a) (1985); G.L. c. 151B, § 1(18); MCAD, et al. v. Massachusetts Trial Court, Docket No. 98-BEM-3943 (MCAD) (July 14, 2005) (hang-up calls fail to amount to sexual harassment where calls lack any "verbal or physical conduct of a sexual nature" and "consisted of no content at all").[2]  In contrast, however, where telephone calls constitute crank phone calls, containing whining or crude noises, they may be considered evidence of sexual harassment.  See O'Rourke v. City of Providence, 235

---

[1] Massachusetts statutory law provides a similar definition:  " 'sexual harassment' shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when… such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment."  G.L. c. 151B, § 1(18).

[2] The Massachusetts Supreme Judicial Court gives great deference to decisions of administrative agencies, and accords substantial deference to MCAD policies and procedures.  See Knight v. Avon Products, Inc., 438 Mass. 413 (2003); Hanover Ins. Co. v. Commissioner of Ins., 443 Mass. 47 (2004) (citing Cobble v. Commissioner of the Dep't of Social Servs., 430 Mass. 385, 390 (1999)).

F.3d 713, 724 (1st Cir. 2001) (affirming sexual harassment verdict where victim offered evidence that she received crank phone calls at home, with the caller whining or making crude noises).  See also Butler v. RMS Technologies, Inc., 741 F.Supp. 1008, 1010 (D.Mass. 1990) (overturned for other reasons by Powell v. City of Pittsfield, 143 F.Supp.2d 94 (D.Mass. 2001)) (racial harassment case noting question of fact existed as to whether calls that subjected plaintiff to "racially offending and derogatory remarks" threatened or intimidated her).

Here, it is expected that Erali will assert his claim for sexual harassment is based in part on 50-60 telephone calls that Evelyn Daly ("Daly"), the Cemetery Superintendent, purportedly made to Erali's home, to his parents' home, to his father's business, and to his wife's mother's house between November 4, 2002 and April 22, 2003.  See Michael Erali's Deposition, pp. 24-29, 40.  It is further expected that Erali will argue that the "incessant" telephone calls to his home were for non-work related matters and occurred at night and on weekend days.  It is on this basis that Erali appears to argue that he was sexually harassed.  See Joint Pretrial Memorandum.

Setting aside the fact that this argument is purely speculative and unsupported by the evidence, the fact remains that even if Daly called Erali's home, his parents' home, his father's business or his wife's mother's house 50-60 times over the course of several months, the mere placement of these phone calls fails to meet the statutory definition of sexual harassment.  See 29 C.F.R. § 1604.11(a) (1985); G.L. c. 151B, § 1(18); MCAD, et al. v. Massachusetts Trial Court, Docket No. 98-BEM-3943 (MCAD).  No evidence exists to show that these telephone calls included "unwelcome sexual advances, requests for sexual favors, or other verbal, non-verbal or physical conduct of a sexual nature."  29

C.F.R. § 1604.11(a) (1985) (emphasis added).  In fact, of the fifty to sixty telephone calls Daly purportedly made, Erali only recalls speaking to Daly by telephone on three occasions:  1) once regarding a former co-worker of Erali's, who had been deployed to Iraq; 2) once about a brush fire at a cemetery; and 3) on April 21, 2003, about a fight with Watson.  See Michael Erali's Deposition, pp. 24, 25, 27, 30, 34, 38, 41.  In further support of Erali's claim, his wife could only recall three phone calls from Daly:  1) Daly allegedly stated that because Erali made a fire at work, it did not snow; 2) Daly called to state that it was snowing; and 3) Daly's calls on the morning of April 21, 2003 in which Alessha simply hung up after stating that Erali was not there or that Erali was at his mother's house.  See Aleesha Watson Deposition, pp. 21, 22, 33-35.

Daly admits to calling Erali about the former co-worker being deployed to Iraq, and while this phone call can be categorized as personal and not work-related, it is hardly "of a sexual nature" to satisfy the statutory requisite.  Daly's call to Erali regarding a brush fire at one of the cemeteries is clearly related to his duties as a cemetery employee and is of an emergency nature to warrant a phone call to Erali's house.  Further, no evidence exists that Daly's phone call regarding the brush fire was "of a sexual nature" to satisfy the statutory standard.  With respect to the April 21, 2003 call, Erali maintains that Daly called to find out if he and Watson were fighting.  See Michael Erali's Deposition, pp. 30, 34, 38.  Assuming, *arguendo*, that Erali's recollection of this phone call is accurate and complete, again no evidence exists that Daly's phone call was "of a sexual nature" to constitute sexual harassment.

In this case, Erali's claims with regards to the alleged phone calls from Daly amount to nothing more than vague and unspecified allegations of harassment because no

4

evidence exists regarding the dates and times of the majority of the alleged phone calls, no evidence exists regarding the duration of any of the calls, and no evidence exists regarding any details as to the nature of the topics discussed. In fact, the only hard evidence that any calls were placed is a handful of pages, which allegedly represent the Caller ID window of Erali's mother's home telephone. See Aleesha Watson Depostion pp. 30-31 submitted with Defendant's Motion for Summary Judgment. No tapes or recorded messages exist of any of the alleged phone calls. Rather, Erali would have the factfinder conclude that the purported phone calls, allegedly made by Daly, to his house or to relatives' homes automatically constitute harassing behavior. Such a conclusion, however, cannot be reached in a vacuum, and, as noted previously, the mere occurrence of multiple, unanswered or hang-up phone calls does not constitute sexual harassment. See Hoseman, 554 F.Supp. at 666; MCAD, supra, Docket No. 98-BEM-3943 (MCAD). Additionally, no evidence exists to confirm that every phone call from the "Town of Orange" constituted a call from Daly, as opposed to a call from Tom Forest or another Town employee. Some of these calls on the Caller ID may even have been placed by Erali if he called home from work. As such, this case is wholly lacking in evidence to support the notion that any of the alleged phone calls to Erali constituted sexual harassment, as statutorily defined.

      Furthermore, the evidence in this case shows that throughout his employment with the Cemetery Department, Erali was either out sick or late for work on as many as sixty-nine (69) days. See Michael Erali's timecards, attached as Exhibit E to Defendant's Statement of Facts in Support of Its Motion for Summary Judgment. The evidence also establishes that Erali was the only full-time employee in the Cemetery Department

5

besides Daly.  See Joint Pre-Trial Memorandum at ¶32.  Consequently, on days when Daly was not sure if Erali would be reporting to work or if he would be late, Daly called him to find out if he would be coming to work.  Daly acknowledged calling Erali at his home and at his mother's home.  Erali also acknowledged that he and his parents did not always answer the phone when Daly called him, and Erali's wife acknowledged that she and Erali did not have an answering machine for the entire period of time that Erali worked for the Town.  See Michael Erali's Deposition, pp. 26, 31-32, 36-37, 43; Aleesha Watson's Deposition, pp. 19-26, 36.  Erali's inability to report for work on time, his failure and that of his family members to answer calls from Daly, and his lack of an answering machine precipitated Daly's phone calls so that she could obtain confirmation as to whether or not Erali was planning on reporting to work in order to make necessary and appropriate daily scheduling decisions for the Cemetery Department.  Accordingly, Daly's phone calls were motivated by legitimate business concerns, not sex or gender.  See Hoseman, 554 F.Supp. at 666 (finding daily calls based on employer's legitimate, non-discriminatory business need to make personnel decisions).

       Thus, because the alleged telephone calls in this case went unanswered, no messages were left, and they lack any content whatsoever, any assertion that the telephone calls were "of a sexual nature" or that they were all from Daly is purely speculative.  Additionally, substantial evidence exists that any calls that were placed were made for legitimate, non-discriminatory business reasons.  As such, this Court should preclude the plaintiff from presenting any evidence and argument at trial regarding unanswered telephone calls and telephone calls where no message was left.

WHEREFORE, for the foregoing reasons, the Defendant respectfully requests that the within motion *in limine* be granted.

        DEFENDANT,

        TOWN OF ORANGE,
        By its attorneys,


        /s/ Carolyn M. Murray
        David C. Jenkins (BBO# 251000)
        Carolyn M. Murray (BBO# 653873)
        Kopelman and Paige, P.C.
        101 Arch Street, 12th Floor
        Boston, MA 02110
        (617) 556-0007

Dated: February___, 2007

303053/METG/0538