UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              :
MICHAEL ERALI II                              :
                                              :
                    Plaintiff,                :    DOCKET NO.  3:04-cv-30241-MAP
                                              :
v.                                            :
                                              :
TOWN OF ORANGE,                               :
                    Defendant.                :
_____             :

Now comes the plaintiff with his proposed jury instructions.  Plaintiff reserves the

right to amend and supplement these instructions as needed and as allowed by the Court.


**PREPONDERANCE OF THE EVIDENCE**

The plaintiff's claims and the defendant's defenses must be proved by a

"preponderance of the evidence".  That term does not mean proof which creates an absolute

or mathematical certainty. Nor does it mean proof beyond a reasonable doubt, that is, proof to

a moral certainty, as is required in criminal cases.

Preponderance of the evidence means to prove that something is more likely so than

not so. In other words, it means to prove something is more likely true than not true.

A party has succeeded in carrying the burden of proof by a preponderance of the

evidence on an issue of fact if, after consideration of all the evidence in the case, the evidence

favoring his side of the issue is more convincing to you

**EMPLOYER RESPONSIBILITY**

An employer can act only through its employees.  An employer is responsible for the acts of its employees, and may be held liable if its employees violate the law.

*Stop & Shop Companies, Inc.  v. Federal Insurance Co.*, 136 F.3d 71, 74 (1st Cir. 1998).

## HOSTILE ENVIRONMENT SEXUAL HARASSMENT

A man can be a victim of sexual harassment in his workplace or here, as Michael alleges, by his female supervisor.  Verbal or physical conduct can amount to sexual harassment if it is sufficiently severe to create an environment that is intimidating, humiliating, intruding, or distressing, or if that environment unreasonably interferes or affects his ability to perform his job as usual or otherwise interferes with and undermines his personal sense of well being.  This is so even if the offensive conduct is not overtly sexual or does not include sexual advances or requests for sexual favors.  The offensive conduct can include sexual innuendoes, slurs, verbal assaults, or an obnoxious course of conduct.


*See O'Rourke v. City of Providence*, 235 F.3d 713, 729 (1st Cir. 2001); *Oncale v. Sundower Offshore Servs., Inc.* 523 U.S. 75(1998); *Harris v. Forklift Systems, Inc*., 510 US 27, (1993). .*Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986);  *Melnychenko v. 84 Lumber Co.* 424 Mass. 285, 290 (1997); *Gnerre v. MCAD*, 402 Mass. 502, 508, n. 4 (1988).

## REASONABLE PERSON STANDARD

The question of whether conduct and speech rise to level of harassment must be considered only from the employee's perspective. The harasser's intent does not matter. You should apply a "reasonable person" standard to determine whether challenged conduct is of a sexual nature but should not be applied in a vacuum. Consideration should be given to the context in which the alleged harassment took place and when considering whether his supervisor sexually harassed Michael you should consider his personality, level of education and intellect and the environment and circumstances endured by him. You should also consider if the alleged harasser was a man and the victim a woman whether you would view the conduct as sexual harassment. In other words, if you find that the conduct alleged here would be sexual harassment if the harasser were a man and the victim were a woman you must find sexual harassment here. The reasonable person standard should consider the victim's perspective and not stereotyped notions of acceptable behavior. A workplace and work environment in which sexual slurs and other offensive conduct occurs can constitute a hostile work environment even if many people deem it to be harmless or insignificant.

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)' *Cf. Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 626, 41 EPD ¶ 36,643 (6th Cir. 1986) (Keith, C.J., dissenting), cert. denied, 107 S. Ct. 1983, 42 EPD 36,984 (1987*;. Lipsett v. University of Puerto Rico*, 864 F.2d 881, 898 48 EPD ¶ 38,393 (1st Cir. 1988); *Highlander v. K.F.C.National Management Co.*, 805 F.2d 644, 650, 41 EPD ¶ 36,675 (6th Cir. 1986).20

## HOSTILE ENVIRONMENT SEXUAL HARASSMENT

It is for you to determine whether the sexually-related or gender-based conduct that the plaintiff complains about unreasonably interfered with his work performance or altered the terms or conditions of his employment by creating an intimidating, hostile, humiliating or sexually offensive work environment.  In making this determination, you should consider comments and conduct by Evelyn Daly outside the workplace.  If you find that her conduct did create such an environment, you must find for the plaintiff on his claim of sexual harassment.

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 24 (1993) (Scalia, J., concurring).

**HOSTILE ENVIRONMENT SEXUAL HARASSMENT**

Sexual harassment is considered a form of gender discrimination, and is prohibited under federal and Massachusetts law. One type of harassment lies in the creation of a hostile working environment. This type of sexual harassment means verbal or physical conduct of a sexual or gender-related nature if it has the purpose or effect of unreasonably interfering with an individual's work performance or altering the terms or conditions of employment by creating an intimidating, hostile, humiliating or sexually offensive work environment. The conduct other may be than explicit sexual advances and may be based on innuendo, stereotyping and other remarks or conduct. The conduct need not all occur in the workplace to be considered as sexually harassing. Comments and conduct directed to others in the workplace and to friend s or family members like his wife Aleesha Erali or Michael's mother, Linda Erali may also contribute to the hostile environment.

G.L. c. 151 B, §1 (18)(b); *College-Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 162 (1987); *Ruffino v. State St. Bank & Trust Co.,* 908 F. Supp. 1019, 1036 (D. Mass. 1995) (citing *Burns v. McGregor Electronic Industries, Inc.*, 989 F.2d 959, 964 (8th Cir.1992) (internal citations omitted)).

### UNWELCOME CONDUCT

The basis of any sexual harassment suit is that the conduct was "unwelcome." The fact that the sexually related or gender based conduct was voluntary, in the sense that the plaintiff was not physically forced to participate against his will, is not a defense to a sexual harassment suit. You must determine whether the plaintiff by his conduct indicated that the phone calling by his supervisor to his home, the comments to him and his spouse and children and touching was unwelcome, not whether the plaintiff's actual participation in the conduct was voluntary. Conduct is "unwelcome" if Plaintiff did not solicit or invite the conduct and regarded the conduct as undesirable or offensive.

In making the factual determination of unwelcome conduct, you must consider the plaintiff's subjective view of the repeated phone calling by Michael's supervisor to his home, the comments to him and his spouse, or mother and any touching. For example, whether the plaintiff took offense at the conduct and the degree to which the plaintiff initiated or was a willing participant in the conduct would be relevant to your determination.

However, a plaintiff's failure to use a specified grievance procedure does not necessarily mean that the conduct was welcome. For instance, if you find that Michael did not respond to suggestive comments or gestures by Evelyn Daly, that may alone be sufficient to show that the conduct is unwelcome.

*Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 68, 72 (1986); *O'Rourke v. City of Providence,* 235 F.3d 713, 729 (1st Cir. 2001); *Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 784 (1st Cir. 1990); *College-Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 158–59, 167 (1987); *Ramsdell v. Western Mass. Bus Lines, Inc.*, 415 Mass. 673, 675, 677–78, 615 N.E.2d 192, 194–95 (1993).

## SEVERE OR PERVASIVE CONDUCT

In determining whether the conduct that the plaintiff complains about was severe or pervasive enough to alter the conditions of his employment or to create an abusive environment, you should consider the frequency of the conduct as well as its severity and offensiveness.  The plaintiff need not show a certain number of incidents to prove that they were subjected to a hostile work environment.   The more severe and offensive the conduct, the less frequent it has to be to create a hostile work environment.  Likewise, less severe and offensive conduct can constitute a hostile environment if it is repetitious.  The type of conduct that may give rise to a hostile work environment includes, but is not limited to, unwelcome physical touching, sexual jokes and innuendos, derogatory gender references and lewd or obnoxious conduct.   When examining whether the conduct was hostile, intimidating, or humiliating, it must be viewed in the light of a reasonable person in the plaintiff's position as I explained to you before.

 *College-Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 158–59, 162, 508 N.E.2d 587, 589, 591 (1987); *Ramsdell v. Western Mass. Bus Lines, Inc.*, 415 Mass. 673, 677–79, 615 N.E.2d 192, 195 (1993); *Gnerre v. MCAD*, 402 Mass. 502, 507–08, 524 N.E.2d 84, 88–89 (1988); *Ruffino v. State St. Bank & Trust Co.*, 908 F.Supp. 1019, 1036 n.28, 1038–39 nn. 34–35 (D.Mass. 1995); *see, also, Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (severity or seriousness of harassing conduct varies inversely with pervasiveness or frequency of conduct); *King v. Board of Regents of the Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir. 1990) (single act can be sufficient for finding of sexual harassment).

## EMPLOYER LIABILITY FOR SEXUAL HARASSMENT

An employer is liable if one of its managers harasses a subordinate. You have heard evidence that Evelyn Daly was Michael Erali's immediate supervisor. If you find that Evelyn Daly sexually harassed Michael Erali, you must find that the defendant Town of Orange is liable for that harassment.

*College-Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 165–67, 508 N.E.2d 587, 592–94 (1987).

## ATMOSPHERE OF DISCRIMINATION

You may consider evidence of the general atmosphere of the workplace and the overall environment created by Ms. Daly and the Town of Orange.  In the circumstances of this case, an environment that was generally hostile by reason of sexual innuendo or sexually-oriented language could form such a general atmosphere of discrimination.  Sexual harassment is determined by looking at the totality of the circumstances in the case.  Incidents of nonsexual conduct—including embarrassment and humiliation may contribute to a hostile work environment. Telephone calls made to the plaintiff at his home and other coduct of Evelyn Daly outside the workplace itself may also contribute to a hostile work environment.  Therefore, even if each incident taken alone did not interfere with Plaintiff's working environment, you must still find for the Plaintiff if all of the acts taken together created an intimidating, offensive, or hostile working environment.

*Crowley v. L.L. Bean, Inc., 2002 C01 340 (USCA1, 2002); O'Rourke v. City of Providence,* 235 F.3d 713, 724 (1st Cir. 2001)*; Williams v. General Motors Corp.,* 187 F.3d 553, 563 (6th Cir. 1999).*Lewis v. Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 767 (1986); *Gnerre v. MCAD*, 402 Mass. 502, 507–08 (1988); *Smith College v. MCAD*, 376 Mass. 221, 228 & n.9, 380 N.E.2d 121, 125 & n.9 (1978); *Harrison v. Boston Financial Data Services*, 37 Mass. App. Ct. 133, 138, 638 N.E.2d 41, 44 (1994).

## CONSTRUCTIVE TERMINATION

An employee may be constructively discharged. That is, although the employer may not fire the employee, the conditions under which the employee is forced to work or the cumulative effect of an employer's actions and inaction may be so difficult or unpleasant that he is effectively forced to resign. To find that Michael was constructively discharged, he must prove by a preponderance of the evidence that the Town of Orange through its supervisor Evelyn Daly, created an intolerable work atmosphere that forced Michael to leave. You must find that a reasonable person in the employee's shoes would have felt it necessary to forsake employment rather than face the looming indignities that he would suffer by remaining at the Town of Orange. The same standard applies here for what constitutes a reasonable person as I have previously set forth for you in these instructions.

*Ramos v. Davis & Geck, Inc.,* 167 F.3d 727, 731-32 (1st Cir. 1999)*; Greenberg v. Union Camp Corp.,* 48 F.3d 22, 27 (1st Cir. 1995); *Vega v. Kodak Carribean Ltd.* 3 F.3d 476, 480 (1st Cir. 1993); *Aviles-Martinez v. Monroig*, 963 F.2d 2, 6 (1st Cir. 1992); *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

## RETALIATION

It is unlawful for an employer to retaliate against an employee for asserting the right to be free from sex discrimination, which in this case means to be free from sexual harassment. If you find that the Town of Orange retaliated against Michael Erali for having complained of sexual harassment, then the Town of Orange is liable to Michael, even if you find that harassment did not actually take place. Retaliation may take the form of the employer, by way of Evelyn Daly or others, either creating or allowing a hostile work environment to take place. When more harassment follows shortly after complaints of sexual harassment the timing may be strongly suggestive of retaliation. This means that if you find that Michael complained to the Town of Orange of workplace harassment, and that the complaints were a motivating factor in ongoing or escalating workplace harassment or of his constructive termination you must find that Michael suffered illegal retaliation.

*Noviello v. City of Boston*, 398 F.3d 76, 88-89 (1st Cir., 2005); G.L. c. 151B, §4.4.
*College-Town, Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 167-68, 508 N.E.2d 587, 594 (1987).

## DAMAGES—GENERALLY

If the plaintiff has proven to you that the defendant unlawfully discriminated or retaliated against him, then you must decide the amount of damages, if any, that will fairly compensate him.  The purpose of an award of compensatory damages is to make a plaintiff whole for all the losses he has suffered because of the defendant's unlawful discrimination or retaliation.  The plaintiff bears the burden of proof on damages by a fair preponderance of the evidence, which I have already explained to you.  Uncertainty in the amount of damages does not bar recovery and mathematical precision is not required.  Yet, you must not speculate, conjecture or guess in awarding damages.  The award is acceptable as long as it is based on just and reasonable inferences from the evidence.  If you find that the defendant unlawfully discriminated or retaliated the plaintiff, then you may award damages in the following three areas:

    1.    back pay and front pay,

    2.    emotional distress, and

    3.    punitive damages.

I will explain each to you.

G.L. c. 151B, § 9; *Conway v. Electro Switch Corp.*, 402 Mass. 385, 388, 523 N.E.2d 255, 256–57 (1988); *Rombola v. Cosindas*, 351 Mass. 382, 385, 220 N.E.2d 919, 922 (1966); *Agoos Leather Co. v. American & Foreign Ins. Co.*, 324 Mass. 603, 608, 174 N.E.2d 652, 655 (1961).

## BACK PAY

If the plaintiff was a victim of discrimination or retaliation, and if you find that he was constructively discharged from employment with the defendant, then he is entitled to back pay, which is the amount of the plaintiff's lost earnings from the date of the adverse employment decision until today. This includes all lost bonuses, employment benefits and health insurance benefits that would have accumulated but for the defendant's discriminatory conduct. However, you should decrease this amount by any earnings and benefits received by the plaintiff from another employer since the date of the constructive discharge.

*Conway v. Electro Switch Corp.*, 402 Mass. 385, 388–89, 523 N.E.2d 255, 257 (1988); *Black v. School Committee of Malden, 369 Mass.* 657, 661, 662, 341 N.E.2d 896, 900 (1976).

**FRONT PAY**

You may also award Michael what is called "front pay," which is the amount of salary and benefits, calculated with reasonable certainty that he would have earned at the defendant from the present date into the future for as long as you believe Michael would have remained at the defendant.

You should apply the same principles I have given you regarding Michael's back pay to the issue of front pay, and reduce any front- pay award by the amount you determine Michael will earn in the future during the period of the front pay.

Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 489 (2000)

Conway v. Electro-Switch Corp., 402 Mass. 385, 390 (1988)

## EMOTIONAL DISTRESS

If you find that the defendant discriminated or retaliated against Michael, you may award them whatever amount you feel is necessary to compensate him for emotional distress. "Emotional distress" is what we call "the deep hurt usually felt by the victim of discrimination." Emotional distress includes mental pain, discomfort, embarrassment, indignity, depression, fear, anxiety or humiliation, anger, loss of self-esteem, or any other unpleasant mental or emotional state that you believe to have resulted from the conduct of the defendant. Damages for emotional distress are not limited as to time. They may represent harm done while a plaintiff was employed but also harm that continued after the employment ended. If you award damages for emotional distress, you should use your common sense to determine the amount of such damages, based on the evidence that is before you.

*Bournewood Hosp., Inc. v. MCAD*, 371 Mass. 303, 315–17, 358 N.E.2d 235, 242–43 (1976); *Rombola v. Cosindas*, 351 Mass. 382, 385, 220 N.E.2d 919, 922 (1966); *Agoos Leather Co. v. American & Foreign Ins. Co.*, 342 Mass. 603, 608, 174 N.E.2d 652, 655 (1962); *Franklin Publishing Co., Inc., v. MCAD*, 25 Mass.App.Ct. 974, 975, 519 N.E.2d 798, 799–800 (1988); *Buckley Nursing Home v. MCAD*, 20 Mass.App.Ct. 172, 182, 478 N.E.2d 1292, 1299 (1985).

## PUNITIVE DAMAGES

If you find that the defendant has discriminated or retaliated against the plaintiff, you may consider in your discretion whether punitive damages are warranted.   Punitive damages may be awarded for conduct that is in reckless indifference to the rights of others.  Punitive damages are different from compensatory damages.  Unlike compensatory damages, which compensate the victim for the harm he has suffered, the purpose of punitive damages is to punish the defendant and to deter future acts of illegal discrimination.

In determining the amount of a punitive damage award, if any, you should consider:

1. the degree of reprehensibility of the defendant's conduct.

2. the defendant's wealth, in order to determine what amount of money is needed to punish the defendant's conduct and to deter any future acts of discrimination;

3. the actual harm suffered by the plaintiffs; and

4. the magnitude of any potential harm to other victims if similar future behavior is not deterred.

If you do award punitive damages, you should fix the amount by using calm discretion and sound reason.

*TXO Prod. Corp. v. Alliance Resource Corp.*, 509 U.S. 443, 459–62 (1993); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15–20 (1991); *Dartt v. Browning Ferris Indus., Inc.* 427 Mass. 1, 18 (1998); *LaBonte v. Hutchins & Wheeler*, 424 Mass. 813, 827 (1997);  *Contardo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 753 F.Supp. 406, 412 (D.Mass. 1990).

## PUNITIVE DAMAGES

Punitive damages are appropriate where a defendant's conduct warrants condemnation and deterrence to dissuade the defendant from acting wrongly in the future.  If you find that the defendant discriminated against Michael by creating a hostile environment, you may award punitive damages, but only if you also find that the defendant's conduct was in reckless indifference to the rights of the plaintiff.  You may find that the Town of Orange is liable for Evelyn Daly's actions if you find that the Town acted with reckless indifference by failing to prevent or control her conduct as Michael's manager.  The Town's actions need not be distasteful on their own to award Michael punitive damages.


*Kolstad v American Dental Ass'n, 527 U.S. 526; Bain v. City of Springfield*, 424 Mass. 758, 767, 678 N.E.2d 155 (1997), *Dartt v. Browning Ferris Industries, Inc.,* 427 Mass. 1, 17-18, 691 N.E.2d 526, 536-37 (1998); *Abramian v. President and Fellows of Harvard College*, 432 Mass. 107, 119, 731 N.E.2d 1075, 1086 (2000).

**PUNITIVE DAMAGES**

If you decide to award punitive damages, the amount of such damages should be determined by taking into account the blameworthiness or reprehensibility of the defendant's conduct, the harm that was likely to occur from the wrongful conduct, the degree of actual harm suffered by the plaintiff, the amount that is necessary so that the defendant recognizes a loss, and the defendant's financial position, so that any award will be an appropriate deterrent to future bad conduct.

*Kolstad v American Dental Ass'n, 527 U.S. 526; LaBonte v. Hutchins & Wheeler*, 424 Mass. 813, 826, 678 N.E.2d 853, 862 (1997)

## MITIGATION OF DAMAGES

A plaintiff also has a duty to limit his damages by seeking other employment. It is the

defendant's burden to prove to you that the plaintiff failed in his duty to mitigate damages.

The defendant meets this burden if it has proved to you that

> 1. one or more discoverable opportunities for comparable employment were available in a location as convenient as or more convenient than the place of former employment,

> 2. the plaintiff unreasonably made no attempt to apply for any such job, and

> 3. it was reasonably likely that the plaintiff would have obtained one of those comparable jobs.

If the defendant has proven these facts, then you should reduce any back pay award to

the plaintiff by the amount that he could have earned in wages and benefits at the comparable

job.

*Powell v. City of Pittsfield,* 221 F.Supp.2d 119 (D. Mass., 2002; *Conway v. Electro Switch Corp.*, 402 Mass. 385, 389, 523 N.E.2d 255 (1988); *Buckley Nursing Home v. MCAD*, 20 Mass.App.Ct. 172, 185, 478 N.E.2d 1292, 1301 (1985); *Black v. School Comm. of Malden*, 369 Mass. 657, 662, 341 N.E.2d 896, 901 (1976).

Dated: February 19, 2007

PLAINTIFF MICHAEL ERALI II
By his attorney,


/s/ Suzanne Garrow
Suzanne Garrow BBO# 636548
sgarrow@comcast.net
Heisler, Feldman, McCormick
       & Garrow, P.C.
1145 Main Street, Suite 508
Springfield, MA  01103
Ph. (413) 788-7988
Fax (413) 788-7996


CERTIFICATE OF SERVICE

      I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).


     /s/ Suzanne Garrow
Suzanne Garrow